The opinion of the Court, was delivered by
Horstblower, C. J.
The facts of this case are shortly these. Sheriff Jones of Hunterdon, had offered a reward of fifty dollars for the apprehension of a prisoner who had escaped from the jail of that county. Stryker, the defendant in Certiorari, arrested the prisoner and lodged him in the jail of Somerset county, for safe keeping, until he could give information to Sheriff Jones, of his apprehension. The next day, Stryker proceeded to Flemington, to inform the sheriff, that he had arrested the prisoner, and to get the reward ; when he discovered that Sergeant and Harris, the plaintiffs in Certiorari had been to the sheriff, and represented to him that they had taken up the prisoner, and claimed the reward, and that the sheriff had paid it to them. — ■ Stryker thereupon sued Sergeant and Harris, before a justice of the peace, for the money so received by them, of the sheriff, as for money had and received to his use, and recovered judgment against them, for the same. From that judgment Sergeant and. Harris appealed, and the Court of Common Pleas affirmed the judgment of the justice.
On the trial below, Jones, the sheriff of Hunterdon, having been first released by Stryker, was examined as a witness and proved the payment of fifty dollars to Sergeant and Harris, but added, that he did not pay the money to them, for the plaintiff, nor on his account, that Sergeant and Harris claimed it as their own, and he paid them the money, supposing them to be entitled to it.
Three questions were made by the counsel on the argument of this cause. 1st. Whether Jones was a competent witness ? 2d. Whether Stryker by releasing Jones, did not give up his right to the reward, if he ever had such-right ? and 3dly. Whether the plaintiff below, was entitled to recover in this action, seeing that the money was paid to and received by the defendants, as their own and for their use ?
*466 1. That sheriff Jones was a competent witness, either with or without a release, there can be, I think, no doubt. The release however removed all objection, if any really existed.
2. The plaintiff, (Stryker) byreleasing the sheriff, has precluded himself from ever resorting to him (as he otherwise might have done) for the promised reward ; but how such release can enure to the benefit of the defendants, if they have money in their hands belonging to the plaintiff) it is not easy to conceive. There is certainly nothing in this objection. But
3. Whether the plaintiff under the facts in this case, is entitled to recover in this action, is a more serious question.
That Stryker, upon the evidence in this case, was alone entitled to the reward, there cannot I think be a reasonable doubt; and if he had sued Sheriff Jones, nothing in my opinion could have prevented his recovery. He has thought proper however to pursue the money, in the hands of the defendants, as money received by them to his use; and whether he can recover, remains to be. seen : I fear he cannot.
The action of assumpsit for money had and received, is undoubtedly a favoured and highly beneficial one. It is justly compared to a bill in equity; because it lets in both parties, plaintiff and defendant, to all the grounds of complaint on the one side, and of excuse and allowance on the other, which are consistent with the principles of equity and. good conscience — • nevertheless, we must not extend it to cases, where a court of Equity itself, if the plaintiff was at liberty to go there, would not entertain a Bill, and give the relief sought for. (Straton v. Rastall, 2 T. R. 370, per Buller Just.) Broad and extensive as this action is, it has limits, beyond which it ought not to go; and the great difficulty is, to prescribe those limits, and make them out by such specific and perceptible lines, as leaves the mind in no doubt or perplexity. To say, that it lies to “ recover bach, money, which ought not to be kept” — “for money, which ex equo et bono, the defendant ought to refund ” — or “ for money which the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity, to refund,” or “for money got through imposition,” or “ extortion,” or “ oppression,” or “ by mistake,” or “ by an undue advantage taken of the plain *467 tiff’s situation,” is after all, dealing in generalities which afford us no specific rule, by which to test any particular case.
Notwithstanding the universality of the expressions used in the books on this subject, there is and must be in truth and justice, a limit to this action. It cannot be that every person having a legal demand and a right of action against a third person, is at liberty to abandon his suit against such person, and by a suit against me for money bad and received, compel me to litigate with him and establish my right to moneys I may have received from Ms debtor. *
Suppose in the present case, that Jones, instead of voluntarily paying the fifty dollars to Sergeant and Harris, had denied their right to it, and refused to pay them, and that thereupon they had sued him, and recovered the money by judgment and execution at law, after a full and fair trial; will it be pretended, that Stryker, because he sets up an exclusive claim to the reward, instead of looking to the sheriff with whom he contracted, may at his own election, or by the suggestion of the sheriff, turn round and sue Sergeant and Harris, and thus, for the sheriff’s benefit, compel them to try over again their right to the money recovered of him ? And yet we most come to this, as it seems to me, if this action can be maintained : for, the plaintiff’s right of action, if he has any against these defendants, cannot depend, upon the question, whether Jones paid them without suit; or whether he resisted the payment until they compelled him to make it. Stryker’s right to recover in this suit, if he has any such right, is n»f, because the sheriff paid the money voluntarily to the defendant", nor because they had no right to it in fact; but because, they in fact, or by implication of law, received it for Stryker. That the sheriff did not pay the money to them, for Stryker, he express! v testifies; nor did they profess so to receive it; but on the contrary, claimed it as their own. If then the law can raise any implication that the defendants received the money to and for the use of Stryker, it must be on the ground that they practised a fraud on the sheriff. But I cannot well perceive how a fraud on one man, can enure to the benefit of another; or how a fraud practised on the sheriff, can raise a promise to pay money to the plaintiff. If indeed, the money had' been paid to Stryker, and left by him in a bag, or purse, with the sheriff for safe keeping, *468 and the'defendants had got possession of it by falsehood and misrepresentation,-then it would have been a fraud on the plaintiff: it would have been his money, and he might have pursued it in this" form of action. But however unfair towards the sheriff the conduct of the defendants has been, they did not thereby get Stryker’s money. — they got Jones’ money, and ex equo et bono, they ought, not to retain it from him — they are bound by the ties of natural justice and equity, to refund it to him; and in his favour, the law considers it in their hands, as money received by them to his use — not to the use of any other person. The money, that Jones paid to Sergeant and Harris, was no more Stryker’s money, than it was the money of any other creditor of Jones; and if he had owed me fifty dollars for a horse, he might with the same propriety have turned me over to them for so much money received by them to my use; because he had paid so much money to them by mistake, which they were not entitled to, and which if he had not paid to them, he would-have paid to me. There must therefore be some principle running through the cases, by which it can be known when indebitatus assumpsit will lie for money had and received, and when it will not. The rule cannot be arbitrary and the creditor at liberty to look to his immediate debtor, or to some other person who has got his debtor’s money-in his hands, at his election. Lord Mansfield says, in Moses v. Me Ferian, 2 Burr. 1009, “ that there are numberless instances in which this action lies, for money the defendant has received from a third person, upon a claim of title to it, in opposition to the plaintiff’s right,” but he adds, “ and which the defendant had by law, authority to receive from such third person.” This is no doubt true, and I think all the cases relied upon are such as go upon the plaintiff’s title to the specific fund ; or where the third person having lawfully paid over the money, the plaintiff has no remedy against him; and this I think will be found to be the true criterion in such cases.
I have felt a strong desire for the sake of justice to sustain this action in this particular case: but upon much reflection and a careful examination of the authorities, I am compelled to give it up. At the very first step, we are met by the rule, that a chose in action is not assignable. As soon as Jones had paid the money to Sergeant and Harris, they not being entitled to it, it became *469 money in their hands to his use, and he alone had a right of action against them for it. This cannot be denied; could then, that right of action be transferred by Jones to Stryker, or to any one else, without the consent of the defendants ? Certainly not. (1 Comyn. on cent. 56 ; 2 Saund. pl. and evid. 209, 212, and cases there cited.) In Surlee et al. v. Hubbard, 4 Esp. N. P. R. 203, Lord Ellenborough said, that where a party, entitled to money in the hands of another person, assigns over his interest in it to a third person, the mere act of assignment does not entitle the assignee, to maintain an action for it. The debtor may refuse his assent; he may have an account against the assignor, and wish to have it set off: but if there is anything like an assent on the part of the holder of the money, it is otherwise. In that case, an assent was proved, and the plaintiff recovered. The eases of Ward v. Evans, 2 Lord Raym. 928; and Israel v. Douglass, 1 Hen. Bl. R. 239, evidently go upon the same ground. The same principle was distinctly recognized by this court, in Cougar v. McFarlan, 2 Green’s R. 370, and in the case of Williams v. Everett et al. 14 East, 582, after a most elaborate argument and great consideration, it was held that money received on bills remitted to the defendants, with instructions to pay the plaintiff, was not money had and received by the defendants to the use of the plaintiff, until the defendants by some act on their part, had recognized the right of the plaintiff to the money. The court say, in that case, (page 597) “ It will be observed that there is no assent on the part of the defendants, to hold this money for the purposes mentioned in the letter; but on the contrary an express refusal to the creditor so to do. If in order to constitute a privity between the plaintiff and the defendants, an assent, express or implied, be necessary, the assent can in this case, be only an implied one, and that too, against the express dissent of the parties to be charged.” This, however, the court held could not be done.
Nor can it, I think, be done in this ease; for the defendants instead of receiving the money, as the money of the plaintiff, or for his use, claimed and received it as their own, and wholly deny the plaintiff’s right to it.
It will not do to rely upon the sweeping expressions used in many of the cases, upon this subject. In Johnson v. Johnson, 3 *470 Bos. and Pul. 169, Lord Alvaney says, “ In the case of Moses v. McFerlan, some principles were laid down, which are certainly too large — such as that, wherever one man has money, which another ought to have, and action for money had and received, may be maintained; or that wherever a man has an equitable claim, he has also a legal action.”
In short, there must be some privity existing between the parties, in relation to the money sought to be recovered in this action. This privity may be either express or implied. It is express, where the defendant has received the money as agent or bailiff for the plaintiff, or where he consents or agrees to appropriate money in his hands belonging to another, to the payment of the plaintiff, at the owner’s request. But it can be implied only where the defendant has received money of the plaintiff’,, or money belonging to the plaintiff, by mistake, or fraud, or duress, or has come into possession of it malajides, or on a consideration which has failed, or has tortiously converted the plaintiff’s property into money. In other words, the money sought to be recovered in this action iipon an implied promise, must either be identically the money of the plaintiff, of which the defendant has improperly possessed himself; or the proceeds of some property, or issuing out of some fund, or emoluments belonging to the plaintiff; and I think every well considered case' will be found to arrange itself under one or the other of these heads. In Lamine v. Dorrell, 2 Ld. Raym. 1216, the action was by a rightful administrator, to recover the proceeds of certain debentures which belonged to the estate of the intestate, and which the defendant, or wrongful administrator, had sold. The case of Howard v. Wood, 2 Lev. 245, Sir T. Jones, 126, and many others of the same kind, were brought by a rightful officer to recover the fees of office, that had been received by one who had held the office wrongfully; and these cases, it will be perceived, are like those mentioned by Lord Mansfield, in Moses v. McFerlan, where the defendant has received money from third persons in opposition to the plaintiff’s right, and which by law, the defendant had authority to receive. But then it must be remembered, that the rightful officer, had a right to those specific fees; and he could not recover them of the persons who had paid them to the officer defacto ; for the officer defacto, while he continued *471 to be such, had a right to demand, and lawful authority to receive the emoluments of office.
The case of Mason v. Waite, 17 Mass. R. 560, was cited by the defendants’ counsel. But far as that ease goes, it does not help the defendant. There, the identical money of the plaintiff, was found in the possession of the defendant, who had got it unlawfully out of the hands of the plaintiff’s agent. The case of Hasser v. Wallis, 1 Salk. 28, was also cited by defendant’s counsel ; but it does not sustain him. Hasser, the plaintiff, being a feme sole, married Wallis, the defendant; he made a lease of her land, and received the rent. She then discovered that Wallis had a former wife, and thereupon sued him in assumpsit for the money he had received. It was insisted that Wallis having no right to receive, the tenant was not discharged; that therefore an action lay against the tenant, who might have his remedy over against Wallis. But the court held, that Wallis was visibly a husband, and the tenant discharged; at least the recovery against, Wallis by the plaintiff, would be a satisfaction to her and discharge the tenant. It is plain that this case has no analogy to the one before us. Sergeant and Harris were not visibly entitled to the reward — payment to them was in no sense payment to Stryker; but the sheriff remained as much bound to him, as if he had thrown so much money into the fire. He did not pay them Stryker’s money, but his own; and Stryker was neither bound to go after them for it, nor had he any more right to do so, than he would have had, if they had found Jones’ pockbt book in the street, with fifty dollars in it. If a man goes to my debt- or and personates me; and my debtor pays him, supposing he is paying me, it is clearly money paid to my use; and in such case I may at my election sue my debtor, or proceed against the imposter ; for the money was paid to him for me, and he received it, as mine. But, my debtor cannot give me a right of action against a third person, by paying him money which he claims a right to in opposition to me; and thus put it in my power to compel such third person to establish his rights as against his debtor, in a suit between me and such third person.
There is still another view which may be taken of this case, which I think is conclusive. It is admitted that Jones the sheriff may sustain assumpsit against the defendants for so much money *472 had and received to his use; and this, in virtue of his general or absolute right of property in the moneys in question. If Stryker can maintain this action, it must be in virtue of his general right of property therein. Now, a right of action for the same property as well on contract as tort, may exist in distinct persons at the same time; but must it not be, where the contract is only implied, by virtue of some special right of property in the one, and general right in the other ? An agent having some beneficial interest in the performance of a contract, (as for commissions, &u.) may sue upon it. As a factor, broker, ware-house man, carrier and others, and so may the principal, 1 Ohitty, pi. 5 ; but they do not sue in the same right. It requires no argument to prove that an absolute and exclusive right to the same property, cannot exist in distinct persons at one and the same time, by virtue of an implied contract: if this be so, how can a right of action grounded upon such an absolute and exclusive right exist in distinct persons at the same time ? It cannot be. If Jones the sheriff can sue for these moneys, Stryker cannot.
Upon the whole, I am of opinion that the judgments below must be reversed. Stryker cannot maintain this suit against the defendants below; they have got what does not belong to them; but that is no wrong to him. His right to the reward at the hands of the sheriff, is as perfect as ever it was; and if he has released it, it is his own fault or misfortune. I see nothing to prevent the sheriff from recovering the money he has paid the defendants, if in fact they did not retake the prisoner.
This is a long opinion, in a little matter, but the principles involved in the case, seemed to require an examination into the grounds upon which this action is maintainable! The judgment, as well of the Common Pleas, as of the Justice, must be reversed.
Ford, J., concurred.
White, J., and Dayton, J., were not on the bench at February Term, 1838, when this cause was argued.

Both judgments reversed.